EXHIBIT

4

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

91

UNITED STATES OF AMERICA,

CRIMINAL NO. CR-10-20403-NGE

HON. NANCY G. EDMUNDS

-vs-

Offenses:
18 U.S.C. § 666(a); and
26 U.S.C. § 7206(1)

F I L E D

SEP 1 2 2011

CLERK'S OFFICE
DETROIT

D-5   DERRICK MILLER,

Statutory Maximum Penalties: 10 years
imprisonment (666), 3 years
imprisonment (7206); $250,000 fine per
count, 3 years supervised release

Defendant.

_____/

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

Derrick MILLER and the government agree as follows:

1.   GUILTY PLEAS

   A.   **Counts of Conviction**

   The defendant will enter a plea of guilty to Count One of the Second

Superseding Information, which charges a violation of Title 18, United States

Code, Section 666(a) (federally funded program violation), and for which the

penalty is a maximum term of imprisonment of ten years and a fine of up to

$250,000.  The defendant also will enter a plea of guilty to Count Two of the

Second Superseding Information, which charges a violation of Title 26, United

States Code, Section 7206(1) (false statement in tax return), and for which the

penalty is up to 3 years imprisonment and a fine of up to $250,000.  The two

counts will be served concurrently.  The defendant also is subject to a special assessment of $200 and up to three years of supervised release.

## B.   Elements of Offenses

The elements of Count One (federally funded program violation), are:

One:            An agent of a local government corruptly solicited, demanded, accepted, or agreed to accept something of value;

Two:            The agent demanded, accepted, or agreed to accept the item of value for the purpose of being influenced or rewarded in connection with his official duties;

Three:          The solicitation, demand, acceptance, or agreement to accept the thing of value was in connection with a transaction or series of transactions of the local government involving anything of value of $5,000 or more; and

Four:           The local government, in a one year period, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance.

The elements of Count Two (false statement on tax return), are:

One:            The defendant made and subscribed a return, statement, or other document which was false as to a material matter;

Two:            The return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

Three:          The defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

Four:           The defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

## C.   Factual Basis for Guilty Pleas

The following facts are a sufficient and accurate basis for defendant's guilty

pleas:

During the period from 2005 to 2007, DERRICK MILLER served as Chief Administrative Officer and Chief Information Officer for the City of Detroit.  In these capacities, MILLER had authority or influence over the lease and sale of certain properties owned by the City of Detroit.  During that time period, MILLER accepted a total of $115,000 from a real estate broker who received commissions in connection with the lease and/or sale of City of Detroit properties.  MILLER accepted the $115,000 intending to be corruptly rewarded in connection with the transactions. The $115,000 involved a series of transactions of the City, each valued at more than $5,000.  In each of the years from 2005 to 2007, the City of Detroit received more than $10,000 in federal funds.

On or about October 15, 2008, MILLER made and subscribed an individual income tax return for the 2007 tax year which contained a written declaration, electronically authorized by MILLER, indicating that it was made under the penalty of perjury.  On this return, MILLER willfully made statements, which he knew were not true and correct, regarding the amount of  income derived from two of his companies, Atrium Financial LLC and Citivest LLC, with the specific intent of concealing that income from the Internal Revenue Service ("IRS"), knowing that such concealment would impact the IRS's determination of his personal tax liability for 2007.

MILLER failed to report on his individual income tax return for 2007 the $46,725 he received that year from the real estate broker (representing a portion of the $115,000 described above).  MILLER also failed to report on his tax return a total of $568,000 he received in 2007 for his assistance to a real estate company that entered into a purchase and leaseback of a portfolio of properties. Specifically, in October 2007, the real estate company paid MILLER a retainer fee of $22,000.  Then, on December 21, 2007, the real estate company paid MILLER's company, Atrium Financial LLC, another $546,000 as a consulting fee for MILLER's work on the purchase/leaseback deal.  MILLER intentionally failed to report these amounts, above, on his tax return for 2007.  The total amount of additional tax due and owing for tax year 2007 was $240,858.

2.   **SENTENCING GUIDELINES**

   A.   **Standard of Proof**

   The Court will find sentencing factors by a preponderance of the evidence.

   B.   **Guideline Range**

   The parties disagree on the applicability of the following guidelines:

U.S.S.G. §§ 2C1.1(b)(1) (regarding number of payments), 2C1.1(b)(2) and

2B1.1(b)(1) (regarding amount of loss as a result of federally funded program

violations), and 2C1.1(b)(3) (regarding public official in high-level decision-making

position).  The government calculates the top of defendant's guideline range as

**120 months**, as set forth on the attached worksheets.  Defendant recommends

that the Court determine that his guideline range is **41 to 51 months**, based on

his calculation of the guidelines, as set forth on the attached worksheets.  The

Court is not bound by either party's recommendation concerning the guideline

range, and defendant understands that he will have no right to withdraw his guilty

plea if the Court does not follow his recommendation.

   If the Court finds:

   a) that defendant's criminal history category is higher than reflected

   on the attached worksheets, or

   b) that the offense level should be higher because, after pleading

   guilty, defendant made any false statement to or withheld information

   from his probation officer; otherwise demonstrated a lack of

acceptance of responsibility for his offenses; or obstructed justice or
committed any crime,

and if any such finding results in a guideline range higher than is recommended
by the parties, then the higher guideline range becomes each party's
recommended range.  However, if the Court finds that defendant is a career
offender, an armed career criminal, or a repeat and dangerous sex offender as
defined under the sentencing guidelines or other federal law, and that finding is
not already reflected in the attached worksheets, this paragraph does *not*
authorize a corresponding increase in either party's recommended range.
Neither party may take a position in this Court contrary to any position of that
party reflected on the worksheets or worksheet addendum, except as necessary
to the Court's determination regarding subsections a) and b), above.

## C.   <u>Relevant Conduct</u>

The relevant conduct in this case includes the following:

In about 2003 and 2004, while serving as Chief Administrative Officer for
the City, DERRICK MILLER twice received $10,000 from Karl Kado, owner of
Metro Services Organization ("MSO"), for MILLER's assistance to MSO in
obtaining and keeping contracts for electrical and cleaning services at Cobo Civic
Center.  MILLER also delivered $10,000 from Kado to Kwame Kilpatrick in about
late 2001, when Kilpatrick was running for Mayor of Detroit.

During the period 2006 to 2007, while serving as Chief Information Officer
for the City, MILLER authorized that at least $4.4 million in funds from the U.S.
Department of Homeland Security ("DHS") be paid to Security Communications
Alert Network ("SCAN") to install security cameras and television screens in the
City to detect and alert the public about potential threats to the public.  MILLER
received more than $10,000 from Andrew Park, one of the owners of SCAN, in
part because of MILLER's assistance in obtaining the DHS funding.

At the direction of then-Mayor Kwame Kilpatrick, MILLER and other members of the City administration assisted Kilpatrick and Bobby Ferguson by steering millions of dollars of City business to Ferguson. Kilpatrick or one of his top assistants, such as MILLER or Victor Mercado, pressured contractors to put Ferguson on City contracts they had received, or risk having the contracts held up or canceled. Mercado and other City officials influenced the award of contracts to teams that included Ferguson on them, including reevaluating bids if Ferguson was not part of the winning team. MILLER and other City officials also gave Ferguson inside information about contracts or bid evaluations to give Ferguson's team an edge over competing bidders.

3.   <u>SENTENCE</u>

The Court will impose a sentence pursuant to 18 U.S.C. §3553, and in doing so must consider the sentencing guideline range.

A.   <u>Imprisonment</u>

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) the government makes a non-binding recommendation that the sentence of imprisonment be no more than **120 months** and defendant recommends that the Court determine that his guideline range is **41 to 51 months.**

B.   <u>Supervised Release</u>

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is **3 years**. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

C.    **Special Assessment**

Defendant will pay a special assessment of **$200** and must provide the government with a receipt for the payment before sentence is imposed.

D.    **Fine**

The parties agree that the fine will be no more than the maximum amount of $200,000.

E.    **Restitution**

The Court shall order restitution to every identifiable victim of defendant's offenses. The government recommends that restitution be limited to the amount of money or items of value the defendant personally received or benefitted from, and the amount of losses, if any, of which he was personally aware. The Court will determine who the victims are and the amounts of restitution they are owed.

4.    **COOPERATION**

Defendant agrees to assist the United States Attorney's Office in the investigation and prosecution of others involved in criminal activities, as specified below.

A.    **Truthful Information and Testimony.** Defendant will provide truthful and complete information concerning all facts of this case known to him. Defendant will provide full debriefings as requested to the U.S. Attorney, and federal, state, and local law enforcement agencies. Defendant will provide truthful testimony at all proceedings, criminal, civil,

or administrative, as requested by the U.S. Attorney. Such testimony may include, but is not limited to, grand jury proceedings, trials, and pretrial and post-trial proceedings. Defendant agrees to be available for interviews in preparation of all testimony. Defendant further agrees to submit, upon request, to government-administered polygraph examinations to verify defendant's full and truthful cooperation. Defendant understands that this obligation to provide cooperation continues after sentencing and that failure to follow through constitutes a breach of this agreement.

**B.    Nature of Cooperation.** The defendant agrees to cooperate in good faith, meaning that the defendant will not only respond truthfully and completely to all questions asked, but will also volunteer all information that is reasonably related to the subjects discussed in the debriefing. In other words, the defendant may not omit facts about crimes, participants, or defendant's involvement, and then claim not to have breached this agreement because defendant was not specifically asked questions about those crimes, participants, or involvement. Defendant will notify the U.S. Attorney in advance if defendant intends to offer a statement or debriefing to other persons other than defendant's attorney. Defendant is not prevented in any way from providing truthful information helpful to the defense of any person. Any actions or statements inconsistent with continued cooperation under this agreement, including but not limited to

criminal activity, or a statement indicating a refusal to testify, or any other conduct which in any way undermines the effectiveness of defendant's cooperation, constitutes a breach of this agreement.

C.      **Government's Authority Regarding Substantial Assistance**

1)      Substantial Assistance Determination.  It is exclusively within the government's discretion to determine whether defendant has provided substantial assistance. Upon the government's determination that defendant's cooperation amounts to substantial assistance in the investigation or prosecution of others, the government will either seek a downward departure from the upper end range of imprisonment set forth in paragraph 3, above, at the time of sentencing under U.S.S.G. § 5K1.1, or a  reduction of sentence pursuant to Fed. R. Crim. P. 35, as appropriate.  If the government makes such a motion, the amount of  the reduction, if any, will be determined by the Court.

2)      Use of Information Against Defendant.  In exchange for defendant's agreement  to cooperate with the government, as outlined above, the government agrees not to use new information that defendant provides (pursuant to this agreement) about defendant's own criminal conduct against defendant at sentencing in this case.  Such information may be revealed to the Court but may

not be used against the defendant in determining defendant's sentence range, choosing a sentence within the range, or departing from the range.  There shall be no such restrictions on the use of information: (1) previously known to law enforcement agencies; (2) revealed to law enforcement agencies by, or discoverable through, an independent source; (3) in a prosecution for perjury or giving a false statement; or (4) in the event there is a breach of this agreement.

5.   **TAX RELATED MATTERS**

   A.   **Filing of Return**

The defendant agrees to file accurate individual income tax returns (original or amended) for the tax years 2005 to 2009 prior to the time of sentencing. Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to the defendant's returns after they are filed.

Upon request, defendant will make himself available to the Internal Revenue Service for a face to face interview and will provide the Service with all documentation requested for the purpose of a civil audit.

   B.   **Cooperation with the Internal Revenue Service**

The defendant agrees to cooperate with the Internal Revenue Service in the determination of the defendant's income tax liability for the tax years 2005 to

2009. Cooperation is defined to include the following:

1)      Face to face interview with a representative of the Internal Revenue Service Examination Division within 60 days of sentencing or at a time set by the examining agent.

2)      At the request of the Internal Revenue Service, the defendant will provide source documentation relevant to the returns at issue. Source documentation includes, but is not limited to, bank records including checks, books and records of related businesses, substantiation for deductions and expenses claimed, names and addresses of individuals for which payments were made, and investment records.

C.      **Internal Revenue Service Forms**

1)      The defendant agrees to submit prior to the sentencing Form 433-A, Collection Information Statement for Wage Earners and Self Employed Individuals, and if applicable, Form 433-B, Collection Information Statement for Businesses.

2)      The defendant agrees to submit prior to the sentencing a Consent to Disclose Taxpayer Information for the years at issue and subsequent years to allow the Internal Revenue Service to disclose taxpayer information of the defendant to the United States Attorney's Office for the Eastern District of Michigan and the United States Probation Department.

6.    **USE OF WITHDRAWN GUILTY PLEA**

If the Court allows defendant to withdraw his guilty plea for a "fair and just

reason" pursuant to FED. R. CRIM. P. 11(d)(2)(B) , defendant waives his rights

under FED. R. EVID. 410, and the government may use his guilty plea, any

statement made under oath at the change-of-plea hearing, and the factual basis

statement in this plea agreement, against him in any proceeding.

7.    **OTHER CHARGES**

If the Court accepts this agreement, the government will dismiss all

remaining charges in this case at the time of defendant's sentencing.

8.    **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

The recommendations in Part 3 are not binding on the Court. Defendant

has no right to withdraw his guilty plea and the parties have no right to withdraw

from this agreement if the Court decides not to follow them.

9.    **WAIVER OF APPEAL**

Defendant waives any right he may have to appeal his conviction.  If the

sentence imposed does not exceed the 120 month maximum allowed by Part 3 of

this agreement, defendant also waives any right he may have to appeal his

sentence.  If the sentence imposed is within the guideline range recommended by

the government as determined by Paragraph 2B the government agrees not to

appeal the sentence, but retains its right to appeal any sentence below that

range.

10. **CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEA OR VACATION OF CONVICTION**

If defendant is allowed to withdraw his guilty pleas or if any convictions entered pursuant to this agreement are vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement.  If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing him to withdraw his guilty plea becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea or to any conduct reflected in the attached worksheets, defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

11. **PARTIES TO PLEA AGREEMENT**

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

12. **SCOPE OF PLEA AGREEMENT**

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to defendant or to the attorney for the

defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

**13.    ACCEPTANCE OF AGREEMENT BY DEFENDANT**

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **5:00 P.M. on August 19, 2011**. The government reserves the right to modify or revoke this offer at any time before defendant pleads guilty.

BARBARA MCQUADE
*United States Attorney*


KATHRYN MCCARTHY
*Assistant United States Attorney*
*Chief, Public Corruption Unit*

MARK CHUTKOW
*Assistant United States Attorney*


R. MICHAEL BULLOTTA
*Assistant United States Attorney*

Date: August 26, 2011

- 14 -

By signing below, defendant acknowledges that he has read (or been read) this entire document, understands it, and agrees to its terms. He also acknowledges that he is satisfied with his attorney's advice and representation. Defendant agrees that he has had a full and complete opportunity to confer with his lawyer, and has had all of his questions answered by his lawyer.

**DERRICK MILLER**
*Defendant*

**BYRON PITTS**
*Attorney for Defendant*

Date: August _19_, 2011

# WORKSHEET A   (Offense Levels)

Defendant: __**Derrick Miller**_____     Counts: ___1 & 2 of Information____

Docket No.: __CR-10-20403-NGE_____     Statutes __18 U.S.C. § 666, 26 U.S.C. § 7206(1)__

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

**\*\* Application of the guidelines that are asterisked ("\*\*\*") are in dispute by the parties. \*\***

## 1.   BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| _2C1.1(a)(1)_ | Fed Program Violation (Public official) | 14 |
| _\*2C1.1(b)(1)\*_ | More than one payment | 0/2 |
| _\*2C1.1(b)(2)\*_ | Loss amount over $120,000 or $2.5 million (see also 1B1.3(a)) | 10/18 |
| _\*2C1.1(b)(3)\*_ | Public Official in high-level decision-making position | 0/4 |

## 2.   ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| _____ | _____ |  |

## 3.   ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**24 / 38**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

*If this is the only Worksheet A, check this box and skip Worksheet B.*

☐

*If the defendant has no criminal history, check this box and skip Worksheet C.*

☒

(rev. 06/99)

# WORKSHEET B   (Multiple Counts)

**Instructions**  (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts.  "All counts involving substantially the same harm shall be grouped together into a single Group."  (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group.  (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

  - assign 1 unit to the Group with the highest offense level,
  - assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
  - assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
  - assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.

1.  **GROUP ONE:**  COUNT ONE (FED PRO. VIOL.)
    ADJUSTED OFFENSE LEVEL
    | 24 / 38 |      | 1    unit |

2.  **GROUP TWO:**  COUNT TWO (TAX)
    ADJUSTED OFFENSE LEVEL
    | 18 |      | ½ or 0 |

3.  **GROUP THREE:**  COUNTS _____
    ADJUSTED OFFENSE LEVEL
    |   |      | unit |

4.  **GROUP FOUR:**  COUNTS _____
    ADJUSTED OFFENSE LEVEL
    |   |      | unit |

5.  **TOTAL UNITS**
    | 1 or 1½ |

6.  **INCREASE IN OFFENSE LEVEL**

    | 1 unit ➔ no increase | 2½-3 units ➔ add 3 levels |
    |---|---|
    | 1½ units ➔ add 1 level | 3½ -5 units ➔ add 4 levels |
    | 2 units ➔ add 2 levels | >5 levels ➔ add 5 levels |

    | 1 or 0 |

7.  **ADJUSTED OFFENSE LEVEL OF GROUP
    WITH THE HIGHEST OFFENSE LEVEL**
    | 25 / 38 |

8.  **COMBINED ADJUSTED OFFENSE LEVEL**

    Enter the sum of the offense levels entered in Items 6 and 7.

    | 25 / 38 |



(rev. 06/99)

# WORKSHEET D   (Guideline Range)

**1.**   (COMBINED) ADJUSTED OFFENSE LEVEL

> Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level
> entered in Item 8 of Worksheet B.

**25 or 38**

**2.**   ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY  (U.S.S.G § 3E1.1)

**3**

**3.**   TOTAL OFFENSE LEVEL

> Enter the difference between Items 1 and 2.

**22 or 35**

**4.**   CRIMINAL HISTORY CATEGORY

> Enter "I" if the defendant has no criminal history.  Otherwise, enter the criminal history category
> entered in Item 6 of Worksheet C.

**I**

**5.**   CAREER OFFENDER / CRIMINAL LIVELIHOOD / ARMED CAREER CRIMINAL
(U.S.S.G. ch. 4, pt. B)

> a.   <u>Total Offense Level</u>:  If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision
> (U.S.S.G. § 4B1.3), or the armed career criminal provision (U.S.S.G. § 4B1.4) results in a total offense
> level higher than the total offense level entered in Item 3, enter the higher offense level total.



> b.   <u>Criminal History Category</u>:  If the career offender provision (U.S.S.G. § 4B1.1) or the armed career criminal
> provision (U.S.S.G. § 4B1.4) results in a criminal history category higher than the criminal history category
> entered in Item 4, enter the higher criminal history category.



**6.**   GUIDELINE RANGE FROM SENTENCING TABLE  (U.S.S.G. ch. 5, pt. A)

> Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total
> offense level entered in Item 3 or 5.a and the criminal history category entered in Item 4 or 5.b.



**41 -51 mos. or
168-210 mos**

**7.**   STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE

> If the maximum sentence authorized by statute is below, or a minimum sentence required by statute
> is above, the guideline range entered in Item 6, enter either the guideline range as restricted by
> statute or the sentence required by statute.  (*See* U.S.S.G. § 5G1.1.)  If the sentence on any count of
> conviction is required by statute to be consecutive to the sentence on any other count of conviction,
> explain why.

**120**  months

(rev. 06/99)

# WORKSHEET E   (Authorized Guideline Sentences)

**1.    PROBATION (U.S.S.G. ch. 5, pt. B)**



      a.    <u>Imposition of a Term of Probation</u>  (U.S.S.G. § 5B1.1)

         **[X]**  1.   Probation is not authorized by the guidelines (minimum of guideline range > 6 months or statute of conviction is a Class A or a Class B felony).  If this box is checked, go to Item 2 (Split Sentence).

         **[ ]**  2.   Probation is authorized by the guidelines (minimum of guideline range = zero months).

         **[ ]**  3.   Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 6 months).

      b.    <u>Length of Term of Probation</u>  (U.S.S.G. § 5B1.2)

         **[ ]**  1.   At least 1 year but not more than 5 years (total offense level ≥ 6).

         **[ ]**  2.   No more than 3 years (total offense level < 6).

      c.    <u>Conditions of Probation</u>  (U.S.S.G. § 5B1.3)

        The court must impose certain conditions of probation and may impose other conditions of probation.

**2.    SPLIT SENTENCE  (U.S.S.G. § 5C1.1(c)(2), (d)(2))**

         **[X]**  a.   A split sentence is not authorized (minimum of guideline range = 0 months or > 10 months).

         **[ ]**  b.   A split sentence is authorized (minimum of guideline range > 0 months but ≤ 10 months).  The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 8, 9, or 10 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, or 6 months).  The authorized length of the term of supervised release is set forth below in Item 4.b

**3.    IMPRISONMENT (U.S.S.G. ch. 5, pt. C)**

      A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D).  (*See* U.S.S.G. § 5C1.1.)

(rev. 06/99)

(**WORKSHEET E, p. 2**)

**SUPERVISED RELEASE** (U.S.S.G. ch 5., pt. D)

    a. <u>Imposition of a Term of Supervised Release</u> (U.S.S.G. § 5D1.1)

       The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute. The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

    b. <u>Length of Term of Supervised Release</u> (U.S.S.G. § 5D1.2)

       ☐  1.  At least 3 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

       ☒  2.  At least 2 years but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

       ☐  3.  1 year, where the count of conviction is a Class E felony or a Class A misdemeanor, i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

       ☐  4.  The statute of conviction requires a minimum term of supervised release of _____ months.

    c. <u>Conditions of Supervised Release</u> (U.S.S.G. § 5D1.3)

       The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

## 5.   RESTITUTION (U.S.S.G. § 5E1.1)

       ☒  1.  The court will determine whether restitution should be ordered and in what amount.

       ☐  2.  Full restitution to the victim(s) of the offense(s) of conviction is *required* by statute. (*See, e.g.,* 18 U.S.C. §§ 3663A, 2327.) The parties agree that full restitution is $_____.

       ☐  3.  The parties agree that the court may order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including $_____. (*See* 18 U.S.C. §§ 3663(a)(3).)

       ☐  4.  The parties agree that the court may *also* order restitution to persons other than the victim(s) of the offense(s) of conviction. (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3).)

       ☐  5.  Restitution is not applicable.

(rev. 06/99)

(WORKSHEET E, p. 3)

**FINE  (U.S.S.G. § 5E1.2)**

  a. <u>Fines for Individual Defendants</u>

    The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).)  Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table.  (*See* U.S.S.G. § 5E1.2(b).)  However, there are exceptions to this general rule.  (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

  b. <u>Fine Range from Fine Table</u>  (U.S.S.G. § 5E1.2(c)(3))

| <u>Minimum Fine</u> | <u>Maximum Fine</u> |
|---|---|
| $  7,500 or 20,000 | $  75,000 or 200,000 |

**7.  SPECIAL ASSESSMENT(S)  (U.S.S.G. § 5E1.3)**

The court must impose a special assessment on every count of conviction.  The special assessments for individual defendants are

    $100.00 for every count charging a felony ($50.00 if the offense was completed before April 24, 1996)
    $ 25.00 for every count charging a Class A misdemeanor,
    $ 10.00 for every count charging a Class B misdemeanor, and
    $  5.00 for every count charging a Class C misdemeanor or an infraction.

The defendant must pay a special assessment or special assessments in the total amount of $  **200**

**8.  ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES**

List any additional applicable guideline, policy statement, or statute.

_____

**9.  UPWARD OR DOWNWARD DEPARTURE  (U.S.S.G. ch. 5, pts. H & K)**

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range.   Possible 5K1.1 downward departure motion, in the discretion of

the government based on assessment of substantial assistance_____

_____

_____

(rev. 06/99)